**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEROLOS HERCLE GAID SALAMA, | Civil Action No. 26-3512 (ZNQ) |
| Petitioner, | |
| v. | **OPINION** |
| LUIS SOTO, *et al.*, | |
| Respondents. | |

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's habeas petition challenging his prolonged immigration detention.  (ECF No. 1.)  Following an order to answer, the Government filed opposition to the petition (ECF No. 7), to which Petitioner replied.  (ECF Nos. 8-10.)  Also before the Court is Petitioner's motion to expedite this matter.  (ECF No. 11.)  For the following reasons, Petitioner's habeas petition shall be granted, and Petitioner shall be accorded a bond hearing before an immigration judge within ten days at which the Government bears the burden of proving that he is either a danger to the community or flight risk by clear and convincing evidence. Petitioner's motion to expedite shall be denied without prejudice as moot in light of the granting of his petition.[1]

---

[1] Petitioner's motion to expedite requests that this Court expedite consideration of his petition or release him pending a decision.  That request is largely based on an emergency surgery for gallstones Petitioner recently underwent while detained.  This Court is able to consider a claim that goes to a petitioner's conditions of confinement, and not the fact or length of detention, in a habeas proceeding "only in extreme cases."  *Folk v. Warden Schuykill FCI*, No. 23-1935, 2023 WL 5426740, at *1-2 (3d Cir. Aug. 23, 2023) (quoting *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020)).  A claim regarding a detainee's medical treatment will not serve as a basis for relief even in a federal civil rights proceeding unless the detainee provides a basis for concluding that the officials overseeing his detention were deliberately indifferent to his medical

## I.    BACKGROUND

Petitioner is a native and citizen of Egypt who was detained by border patrol agents shortly after crossing the southern border on October 8, 2024.  (ECF No. 7-2 at 3-4.)  Petitioner was taken into custody and was processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1).  (*Id.* at 4.)  On October 26, 2024, the Government released Petitioner from detention on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  (ECF No. 7-3 at 3.)  Petitioner thereafter filed applications for asylum and withholding of removal.  (*Id.*)

On November 12, 2025, Petitioner's parole was revoked and Petitioner was taken back into immigration custody following an interview with immigration officials.  *See Salama v. Soto*, No. 25-18990 (ESK), Opinion, ECF No. 15 at 2.  On December 24, 2025, Petitioner filed a habeas petition challenging that detention.  *Id.*  On February 10, 2026, the assigned district judge at that time issued an opinion finding that, in light of the history of Petitioner's capture shortly after crossing the border and parole from detention, Petitioner was properly subject to mandatory detention under 8 U.S.C. § 1225(b)(1).  *Id.* at 3-5.  That same day, an immigration judge denied Petitioner's requests for relief from removal and ordered Petitioner removed.  (ECF No. 7 at 2.)  Petitioner appealed that decision to the Board of Immigration Appeals, and that appeal remains pending at this time.  (*Id.*)  In his current petition, Petitioner seeks not to challenge the statutory

---

needs.  *See, e.g., Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *see also Hope* 972 F.3d at 328-32.  Here, Petitioner has not provided facts indicative of deliberate indifference, and instead has provided facts suggesting that immigration officials provided immediate emergency treatment when his gallstones presented themselves, and he merely disagrees with the course of that treatment.  This is not an "extreme case" in which this Court should consider medical claims in light of the treatment Petitioner did receive, and therefore the Court addresses the merits of Petitioner's petition and grants him relief on the claim he raised in his initial petition rather than delay relief through further briefing of the motion to expedite.

basis for his detention or the then-assigned district judge's prior decision, but instead argues that his detention under § 1225(b)(1) has become so prolonged as to amount to a violation of his right to due process.  (ECF No. 1.)

## II.    **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.    **DISCUSSION**

In his habeas petition, Petitioner seeks to challenge his continued detention under 8 U.S.C. § 1225(b)(1), which Petitioner contends has become so unduly prolonged as to amount to a denial of Due Process.  Although Judge Kiel previously determined that Petitioner is properly subject to mandatory detention under § 1225(b)(1), it does not follow that Petitioner may be held indefinitely without bond so long as he has yet to be removed.  As this Court has explained,

> Although aliens subject to detention under § 1225(b)(1) "have only those rights regarding admission that Congress has provided by statute" and the Due Process clause does not provide for detailed review of those statutory proceedings, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020), it does not follow that the Due Process clause is silent as to the rights of aliens to liberty following prolonged detention, especially where that alien was previously permitted to be at liberty on parole for a considerable period.
>
> Courts in this District have long presumed that aliens subject to prolonged detention under the statute have a liberty interest in

3

release from detention which requires a bond hearing. *See, e.g., Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442-43 (D.N.J. 2019). In so doing, courts have analogized mandatory detention under 1225(b) to the similar mandatory detention required for aliens who have qualifying criminal convictions under 8 U.S.C. § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-13 (3d Cir. 2020). In *German Santos*, the Court of Appeals held that where an alien is subject to prolonged detention under the statute, that detention will eventually reach a point where it essentially becomes arbitrary in light of the purposes and presumptions underlying the statute. *Id.* In the context of those with criminal convictions subject to detention under § 1226(c), detention "becomes more and more suspect after five months and in most cases will become "unreasonable sometime between six months and one year." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026). Once the length of detention becomes suspect, a reviewing court must consider the length of detention and likelihood of lengthy continued condition, the similarity of Petitioner's conditions of confinement to criminal detention, and the Petitioner's responsibility for the length of his own detention in determining whether detention has become arbitrary in light of the purposes of § 1226(c). *German Santos*, 965 F.3d at 211. Where those factors indicate that detention has become arbitrary, the alien is entitled to a bond hearing at which the Government bears the burden of proving that further detention is necessary by showing that the Petitioner is a danger or flight risk by clear and convincing evidence. *Id.* at 213-14.

This Court agrees that, at a certain point, detention under § 1225(b)(1) will become so prolonged that it becomes arbitrary and Due Process will require a bond hearing. *Tuser E.*, 370 F. Supp. 3d 442-43. The question that remains, then, is at what point detention will become suspect. Although in the § 1226(c) context, detention will become arbitrary only after cresting five months, that length of time is based on the concept that the court can essentially presume that an alien convicted of qualifying crimes is a flight risk or danger to the community for the length of time it ordinarily would take to complete removal proceedings. *German Santos*, 965 F.3d at 209-10. The alien's criminal history is in that context providing the basis for the presumption which places a limits on his liberty interests in the § 1226(c) context.

Aliens detained under § 1225(b)(1) are not held based on a criminal history[.] The statute instead relies chiefly on the presumption that an alien with no clear right to admission into the United States is a flight risk and may therefore be detained for the

4

>relatively limited period of time required for him to receive an *expedited* order of removal. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(A). Such proceedings are clearly intended to be considerably shorter than the general removal proceedings to which criminal aliens already in the United States are subject under § 1226(c), and the presumptive basis for mandatory detention under the statute is considerably weaker than that applicable to criminal aliens as it is based solely on the lack of legal status rather than past misdeeds. It therefore follows that detention under § 1225(b)(1) should become suspect far sooner than detention under § 1226(c).

*Martinez Olivo v. Soto*, No. 26-2122, 2026 WL 1265500, at *2-3. In light of the lesser justification for prolonged detention under § 1225(b)(1), this Court has found that detention in a jail-like detention facility for several months following a lengthy period of parole within the United States is sufficient to warrant the granting of a bond hearing. *Id.*

In this matter, Petitioner has been held without bond since November 2025. Petitioner's detention has now passed seven months, all of which was spent in a jail-like detention facility which is not meaningfully distinguishable from criminal pretrial detention. Nothing in the record suggests that Petitioner was in any way responsible for unnecessarily or unreasonably prolonging this period of detention, and Petitioner's detention is likely to continue for some time until, at the very least, the BIA decides his pending appeal. Given these facts, this Court finds that Petitioner's continued detention without bond has become so prolonged that it can no longer satisfy Due Process based solely on the presumption that he is a flight risk based on the manner of his entry to the United States. Petitioner's continued detention without a bond hearing has thus become so prolonged as to become arbitrary, and Petitioner is entitled to a bond hearing under the Due Process clause. *German Santos*, 965 F.3d at 213-14. Petitioner's habeas petition shall therefore be granted,

5

and he shall be provided such a bond hearing within ten days at which the Government bears the burden of proving he is a danger or flight risk by clear and convincing evidence.[2]

---

[2] Should Petitioner be granted release on bond, such a release shall not be construed as an admission into the United States for immigration purposes, and such release provides no legal status to remain in the United States which Petitioner did not already possess.

## IV.    CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED**, and Petitioner shall be provided a bond hearing at which the Government bears the burden of demonstrating danger or flight risk by clear and convincing evidence within ten days.  Because this Court will grant the petition, Petitioner's motion to expedite (ECF No. 11) is **DENIED WITHOUT PREJUDICE** as moot.  An appropriate order follows.


Date: June 23, 2026

                              s/ Zahid N. Quraishi
                              **ZAHID N. QURAISHI**
                              **UNITED STATES DISTRICT JUDGE**